IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case Number |
| | § | 13-37292 |
| Tony McClung, | § | (Chapter 11) |
|    Debtor(s). | § | |

PLAN OF REORGANIZATION
AND DISCLOSURE STATEMENT

Tony McClung file this Plan of Reorganization and Disclosure Statement. Dr. McClung is seeking to repay his debts over time pursuant to the terms of his Plan of Reorganization. As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

The Court has not yet confirmed the Plan. In other words, the terms of the Plan are not yet binding on anyone. If the Court later confirms the Plan, then the Plan will be binding on Dr. McClung and on all creditors and interest holders in this case.

Dr. McClung represents that everything in this document is true to the best of his knowledge. **READ THIS DOCUMENT CAREFULLY IF YOU WANT TO KNOW:**

- Who can vote or object.

- The treatment of your claim is (*i.e.*, what your claim will receive if the plan is confirmed).

- The history of the debtor and significant events during the bankruptcy.

- How the court will decide whether to confirm the plan.

- The effect of plan confirmation.

- Whether this plan is feasible.

1. **Background**

Dr. McClung filed a voluntary petition on November 26, 2013 that commenced a Chapter 13 case. On March 27, 2014, Dr. McClung filed a Motion to Convert that case to Chapter 11. That Motion was granted on March 27th to commence this chapter 11 bankruptcy case. The filing of the petition constituted an order for bankruptcy relief under § 301 of the Bankruptcy Code. Upon the filing of the case, an automatic stay was imposed pursuant to § 362(a) of the Bankruptcy Code. The automatic stay prohibits most

collection activities against Dr. McClung and his property.  There are certain exceptions set forth in § 362(b) of the Bankruptcy Code.

The first date scheduled for the meeting of creditors under § 341(a) of the Bankruptcy Code was January 3, 2014.  The meeting took place as scheduled and was concluded on that date.  A subsequent 341 meeting with scheduled and held on May 16, 2014 following conversion of the case to Chapter 11.

When Dr. McClung filed this bankruptcy case, all of his property became property of his bankruptcy estate.  Dr. McClung was allowed to claim that certain property should be treated as exempt property and excluded from the bankruptcy estate. On December 10, 2013, Dr. McClung filed his list of claimed exempt property.  Federal Rule of Bankruptcy Procedure 4003(b) requires that all objections to the claimed exemptions be filed not later than 30 days after the conclusion of the § 341 meeting of creditors.  No timely objections to exemptions were filed.  Accordingly, the exemptions have been allowed.

The following bankruptcy cases are related to this bankruptcy case.

| Case Name | Case Number | Date Filed | Nature of Relationship |
|---|---|---|---|
| None | | | |
| | | | |

## 2. Description of Assets

Dr. McClung filed schedules of all of his assets and liabilities on December 10, 2013.  The schedules were amended following conversion on April 10, 2013.  Complete copies of the schedules are available from the Clerk of the Court.  The primary assets of the bankruptcy estate, their estimated values as of this date and associated liens are:

| Description of Asset | Estimated Fair Market Value | Amount of Debt Secured by Liens Against this Asset | Amount Claimed Exempt | Value Available to Estate | Basis of Estimated Value |
|---|---|---|---|---|---|
| Cash | $88,000 | $172,898.73 | 0 | $88,000 | Bank Statement |
| Household Goods | $905.00 | $172,898.73 | $905.00 | $0 | Good Faith Estimate |
| Books and Movies | $20.00 | $172,898.73 | $20.00 | $0 | Good Faith Estimate |
| Wearing Apparel | $200.00 | $172,898.73 | $200.00 | $0 | Good Faith Estimate |
| Jaguar Auto | $29,825.00 | $191,019.73 | $11,704.00 | $0 | Kelly Blue Book |

| | | | | | |
|---|---|---|---|---|---|
| Land Rover Auto | $18,000.00 | $19,239.68 | 0 | $0 | Kelly Blue Book |
| LPL Financial IRA | $145,000.00 | $172,898.73 | $145,000.00 | $0 | Account Statement |
| Office Equipment | $500.00 | $172,898.73 | $500.00 | $0 | Good Faith Estimate |
| Homestead Houston | $552,500.00 | $436,131.73 | $289,267.00 | $0 | CAD Value |
| | | | Total Equity less exemptions | $88,000.00 | |
| | | Total of IRS floating Lien | | $172,899 | |
| | | Total Net Equity | | $0 | |

Dr. McClung has identified the following lawsuits that may be filed by them. Mark only those that apply.

\_\_X\_\_ Lawsuits to recover fraudulent transfers:

| Potential Defendant | Date(s) of Transfer(s) | Amount of Claim |
|---|---|---|
| None | | |
| | | |

\_\_X\_\_ Lawsuits to recover preferences:

| Potential Defendant | Date(s) of Transfer(s) | Amount of Claim |
|---|---|---|
| None | | |
| | | |

\_\_X\_\_ Lawsuits arising under other provisions of the Bankruptcy Code:

| Potential Defendant | Description of claim | Amount of Claim |
|---|---|---|
| | | |
| | | |

\_\_X\_\_ Lawsuits arising under non-bankruptcy law:

Page 5

| Potential Defendant | Description of claim | Amount of Claim | Describe Whether Debtor Intends to Pursue Lawsuit and, if not, Why |
|---|---|---|---|
|  |  |  |  |

### 3. Events Leading Up to Bankruptcy

Dr. McClung filed bankruptcy after the following events made him determine that bankruptcy was the best course of action for himself and his creditors.

Dr. McClung had serious financial difficulties between 2006 and 2009 due, primarily, to poor financial services provided to him. His tax returns for 2005, 2006 and 2007 were filed on the basis of revenues alone without accounting for his corporation's operational expenses. The result was a string of tax liabilities and defaults in his home mortgage. Dr. McClung then became acquainted with Mr. Scott Tucker. Mr. Tucker is a graduate of the University of Houston with a Degree in finance. Mr. Tucker was able to reconstruct the financial reports of Dr. McClung's practice. Dr. McClung attempted several loan modifications but was unable to obtain lender approval prior to being issued a notice of mortgage foreclosure. Dr. McClung filed to prevent foreclosure and loss of both his homestead and a significant equity value.

### 4. Sources of Income

In the last three years, Dr. McClung's primary sources of income have been:

Income from Employment (by him)

| Year | Employer | Amount of Income |
|---|---|---|
| 2013 | Medical Practice - Pain Clinic | $74,000.00 |
| 2012 | Medical Practice - Pain Clinic | $82,000.00 |
| 2011 | Medical Practice - Pain Clinic | $- |

Income from Operation of Business

| Year | Employer | Amount of Income |
|---|---|---|
| 2013 | Medical Pracctice d.b.a. McClung MD PA | $331,796.00 |
| 2012 | Medical Pracctice d.b.a. McClung MD PA | $321,917.00 |
| 2011 | Medical Pracctice d.b.a. McClung MD PA | $256,290.00 |

\*\* Note Well these figures are GROSS REVENUES

### 5. Description of Reorganization

Page 6

Dr. McClung intends to reorganize his finances through a combination of the following:

__X__  Increasing his income.  If this box is marked, complete the following:

Specifically, how does Dr. McClung intend to increase his income?

Dr. McClung's income from private practice has increased an average of 14% in each of the last three years.  In addition, post filing, he has been able to direct his efforts and attention to practice and, thus, he has increased his average monthly net income from both practice segments to $11,000 per month.  He anticipates a similar rise in income in this year and then level performance thereafter.

Dr. McClung believes that his income in each of the next five years will be:

| Year | Source | Income |
| --- | --- | --- |
| 2014 | Practicing Medicine | $104,000.16 |
| 2015 | Practicing Medicine | $162,800.16 |
| 2016 | Practicing Medicine | $162,800.16 |
| 2017 | Practicing Medicine | $162,800.16 |
| 2018 | Practicing Medicine | $162,800.16 |
| 2018 | Practicing Medicine | $162,800.16 |

____  Surrendering the following collateral to eliminate the obligation to repay secured indebtedness.

| Lender | Description of Collateral | Total Debt secured by Collateral |
| --- | --- | --- |
| None | | |
| | | |
| | | |
| | | |
| | | |

_x___  Reducing their other expenditures, as follows:

| Description of Expenditure | Previously Expenditures (per month) | Forecast Expenditures (per month) | Description of how reduction will be made |
| --- | --- | --- | --- |
| Jaguar Payment | 822.00 | 393.99 | Re-amortized in plan over 60 month term |
| Land Rover | 594.80 | 423.85 | Re-amortized in plan over 60 month term |

Page 7

| Description of Expenditure | Previously Expenditures (per month) | Forecast Expenditures (per month) | Description of how reduction will be made |
|---|---|---|---|
| Payment | | | |
| Home Owners Insurance | 629.11 | 300 | Remove forced placed insurance and replace with more favorable rate insurance. |
| | | | |
| | | | |

____   Selling the following assets:

| Description of Asset | Forecast Net Proceeds from Sale | Forecast Date of Sale |
|---|---|---|
| | | |
| | | |
| | | |

____   Other: [Provide Complete Description]

## 6. Classification and Treatment of Claims

The following is the classification and treatment of claims under this plan:

| Class | Description of Class | Impaired or Unimpaired | Total Amount of Claims Forecast to be in this Class | Interest Rate, if any | Terms of Repayment, including security, if any, and abandonment of collateral, if any (See Section 5 for a More Complete Description of any Abandonments) | Total Payable in Months 1 - 12 | Total Payable in Months 13- 24 | Total Payable in Months 25 - 36 | Total Payable in Months 37 - 48 | Total Payable in Months 49 - 60 | Total Payable in Months 61 - 72 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Allowed Secured Claim of Chase Bank secured by homestead property | Impaired | 72,523.00 | 6.125% | Paid according to the contract terms in effect at the commencement date at the interest rate and in the usual monthly amount plus escrow for real estate taxes less insurance. Following full performance of the Plan, the mortgage defaults existing as of the confirmation date will be deemed cured and the Debtor shall continue paying the balance of obligation according to pre-petition contract terms. | 20,598 | 20,598 | 20,598 | 20,598 | 20,598 | 20,598 |

Page 9

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | Allowed secured claim of Chase Bank for arrearages and defaults in First Mortgage referenced in Class 3 above. | Impaired | 172,892.37 | 6.125% | This mortgage arrearage is to be secured to the same extent it was secured on the Commencement Date.  It is to be paid through issuance of a simple note calling for payments on an amortized basis at the rate for non-default performance by Debtor contained in the original loan documents over a period of 72 months. | 44,144 | 44,144 | 44,144 | 44,144 | 44,144 | 44,144 |
| 3 | Allowed Secured claim of Credit Aceptance Corp (Range Rover) | Impaired | 19,494.31 | 5.25% | The allowed secured claim to be paid in blended installments of principal and interest over 60 months. Secured party to retain pre-petition lien modified only to provide for new start date, rate, and term of note. | 4,441 | 4,441 | 4,441 | 4,441 | 4,441 | |
| 4 | Allowed Secured Claim of Westlake Finajncial (Jaguar) | Impaired | 18,121.00 | 11.00% | The allowed secured claim to be paid in blended installments of principal and interest over 60 months. Secured party to retain pre-petition lien modified only to provide for new start date, and term of note. | 4,477 | 4,477 | 4,477 | 4,477 | 4,477 | |

Page 10

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 | General Unsecured Creditors | Impaired | 30519.25 | 0.0275 | Allowed claims are to be paid over a period of 60 months together with interst at 2.75% per annum | 6,540 | 6,540 | 6,540 | 6,540 | 6,540 | |
| | | | | | | | | | | | |
| | | | | | Totals | $80,200 | $80,200 | $80,200 | $80,200 | $80,200 | $64,742 |

Only holders of claims that are "impaired" have the right to vote to accept or reject the plan. If a claim is not marked as impaired, it will be paid in accordance with the pre-petition contract that governs the claim. If there is a discrepancy between the payments reflected in the above chart and the pre-petition contract, the pre-petition contract will control.

The forecast claims in this class are the amount of claims that Dr. McClung believes will ultimately be allowed by the Court. The following claims either have been made or are expected to be made and are disputed:

| Class | Holder of Claim | Amount of Claim Asserted by Holder | Amount of Claim Agreed by McClung | Description of Dispute |
|---|---|---|---|---|
| | | | 0.00 | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Dr. McClung is not aware of any present disputes over any other claim. Unless otherwise specified in the following paragraph, payments shall be made monthly, on the first day of each month.

### 7. Payment of Administrative Claims

Administrative claims are the claims allowed under § 503(b) of the Bankruptcy Code for administration of this bankruptcy case. These claims will be paid in cash on the Effective Date of the plan, unless a written agreement to the contrary is made with the holder of any such allowed claim.

The Court must approve all professional fees listed in this table. Professionals must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be required to be paid under this plan.

The following are the estimated administrative claims:

| Claimant | Nature of Claim | Amount Claimed by Claimant | Amount Forecast to be Paid by Dr. McClung | Total Payable in Months 1 - 12 | Total Payable in Months 13- 24 | Total Payable in Months 25 - 36 | Total Payable in Months 37 - 48 | Total Payable in Months 49 - 60 | Total Payable in Months 61-72 |
|---|---|---|---|---|---|---|---|---|---|
| Wyatt and Gracey PC | Attorney Fees | 12,000.00 | 12,000.00 | 12,000 | - | - | - | - | - |

### 8. Payment of Priority, Unsecured Tax Claims of Governmental Units

Except as otherwise agreed between the holder of any allowed claim described herein and the Debtor, Claims held by governmental units of the type described in § 507(a)(8) of the Bankruptcy Code will be paid in full, with interest at an annual rate of 3% (or such other rate as noted below), in equal monthly installments over a period beginning 30 days after the Effective Date of the plan and ending five years after the date of the filing of the petition.  Notwithstanding the foregoing treatment, any holder of a § 507(a)(8) claim may file a written election to be treated on the same basis as any nonpriority unsecured claim. Any such election must be filed in writing not later than 14 days after entry of the order confirming the plan.   Debtor will seek agreeement to have this claim paid over 60 motnhs.
The following claims are in this category:

| Claimant | Nature of Claim | Interest Rate (if other than general interest rate set forth above) | Amount Claimed by Claimant | Amount and nature of any dispute by Dr. McClung | Total Payable in Months 1 - 12 | Total Payable in Months 13- 24 | Total Payable in Months 25 - 36 | Total Payable in Months 37 - 48 | Total Payable in Months 49 - 60 |
|---|---|---|---|---|---|---|---|---|---|
| IRS | Income Taxes Secured Portion | | 172,898.37 | Subject to revision based on amended returns | 37,281.09 | 37,281.09 | 37,281.09 | 37,281.09 | 37,281.09 |
| IRS | Income Taxes unsecured priority portion | | 10,287.49 | Place Holder | 10,287.49 | | | | |
| | | | | Totals | 47,568.58 | 37,281.09 | 37,281.09 | 37,281.09 | 37,281.09 |

## 9. Forecasts

Based on the preceding forecasts of income and expenses and on the provisions of the plan, Dr. McClung provides these forecasts of his cash flow:

|  | Months 1 - 12 | Months 13- 24 | Months 25 - 36 | Months 37 - 48 | Months 49 - 60 | Months 61 - 72 |
|---|---|---|---|---|---|---|
| Beginning Cash Balance | 69,000 | 43,967 | 41,221 | 38,475 | 35,729 | 32,983 |
| Income from Employment | 72,000 | 72,000 | 72,000 | 72,000 | 72,000 | 72,000 |
| Gross Income from Operation of business | 432,216 | 432,216 | 432,216 | 432,216 | 432,216 | 432,216 |
| Income from Sale of assets | - | - | - | - | - | - |
| Retirement/social security income | - | - | - | - | - | - |
| Domestic support received | - | - | - | - | - | - |
| Rental income | - | - | - | - | - | - |
| Other income | - | - | - | - | - | - |
| TOTAL INCOME | 504,216 | 504,216 | 504,216 | 504,216 | 504,216 | 504,216 |
| Taxes on income | 19,461 | 19,461 | 19,461 | 19,461 | 19,461 | 19,461 |
| Proeprty Taxes | in house payment -------------------------------------------------------------------------------------------------- | | | | | |
| Insurance | in house payment -------------------------------------------------------------------------------------------------- | | | | | |
| Household expenses | 32,220 | 32,220 | 32,220 | 32,220 | 32,220 | 32,220 |
| Charitable contributions | - | - | - | - | - | - |
| Business expenses | 342,580 | 342,580.08 | 342,580.08 | 342,580.08 | 342,580.08 | 342,580.08 |
| Transportation expenses | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Medical and dental | - | - | - | - | - | - |
| Domestic support payments | - | - | - | - | - | - |
| Recreation and entertainment | - | - | - | - | - | - |
| Other expenditures (specify) | - | - | - | - | - | - |
| TOTAL EXPENDITURES | 395,761 | 395,761 | 395,761 | 395,761 | 395,761 | 395,761 |
| NET CASH FLOW THIS PERIOD | 108,455 | 108,455 | 108,455 | 108,455 | 108,455 | 108,455 |
| Payments to Plan | 133,488 | 111,201 | 111,201 | 111,201 | 111,201 | 37,863 |
| Cash Flow this Period after Plan Payments | (25,033) | (2,746) | (2,746) | (2,746) | (2,746) | 70,592 |
| Endiing Cash balance | 43,967 | 41,221 | 38,475 | 35,729 | 32,983 | 103,575 |

Monthly reports have been filed showing actual income and expenses during the period of the bankruptcy case. These forecasts vary from the monthly reports for the reasons described in the following narrative.

Page 13

Initial revenues were less than average due to distracting effect of creditor actions on the Dr.'s professional practice. As the Chapter 11 case has proceeded, the Dr. has been able to focus on practice and begin to increase his revenues and maximize his utilization. In addition, a national inflation factor of 1.2 percent per annum has been added to both business revenue and business expense estimates. However, a recent change by the Federal Government in covered healthcare will result in a $3,000 per month reduction in Dr. McClung's pain clinic income commencing November, 2014.

## 10. Disposable Income Test

If an unsecured creditor objects to confirmation, the plan can be confirmed only if it provides for (x) a 100% distribution to creditors; or (y) a distribution to creditors that is of a value of not less than the debtor's projected disposable income to be received during the longer of (i) the 5-year period beginning on the date that the first payment is due under the plan; or (ii) the term of the plan. Disposable income is the difference between income and necessary expenses.

Notwithstanding any provision in this plan to the contrary, Dr. McClung commits to make payments of a value not less than required by the preceding paragraph.

## 11. Cramdown and Absolute Priority Rule

If a class of creditors does not accept the plan, Dr. McClung will seek to obtain confirmation through the cramdown provisions of § 1129(b). This means that the plan must be fair and equitable to the class that does not accept the plan. The definition of whether the plan is fair and equitable may be found in § 1129(b) of the Bankruptcy Code.

The balance of this section only applies if a class of unsecured claims does not accept the plan. In that instance, the Debtor seeks confirmation of the plan pursuant to § 1129(b). The law is unclear whether the Absolute Priority Rule would apply in this individual chapter 11 case. The Absolute Priority Rule is contained in § 1129(b)(2)(B) of the Bankruptcy Code. If a class of unsecured claims has not voted to accept the plan, the Absolute Priority Rule provides that the debtor may not retain property unless the holders of claims in the class are paid in full.

If a class of unsecured claims does not accept this plan, Dr. McClung will (mark all that apply):

    _____    Allege that the Absolute Priority Rule does not apply in a chapter 11 case in which the debtors are individuals.

    \_\_\_\_XX\_\_\_\_\_    Withdraw this plan.

    _____    Sell or surrender all of their non-exempt property and pay any resulting proceeds to their creditors.

Page 14

  \_\_\_XX_____ Increase the distribution to the holders of unsecured claims such that each holder is paid in full.

  _____ Other.  Describe:_____
     _____
     _____

## 12. Liquidation Analysis

  Section 1129(a)(7)(A) of the Bankruptcy Code requires that each holder of a claim must either accept the plan or receive payments or property with a value of at least as much as would be available in a chapter 7 liquidation of the McClung' assets.

  As set forth above, each holder of a secured claim is either receiving its collateral or is being paid the value of its claim, with interest.  This treatment satisfies the liquidation test under § 1129(a)(7)(A).  Holders of priority claims are paid in full, with interest.  This also satisfies the requirements of § 1129(a)(7).

  Holders of general unsecured claims are forecast to receive a dividend of 100% of their allowed claim.  Dr. McClung has estimated that his assets, after payment of liens would generate the following amounts in a chapter 7 liquidation:

| Description of Asset | Estimated Liquidation Value | Amount of Debt Secured by Liens Against this Asset | Amount Claimed Exempt | Value Available to Estate in Liquidation |
|---|---|---|---|---|
| Cash | $88,000 | | 0 | $88,000 |
| Household Goods | $905.00 | | $905.00 | $0 |
| Books and Movies | $20.00 | | $20.00 | $0 |
| Wearing Apparel | $200.00 | | $200.00 | $0 |
| Jaguar Auto | $29,825.00 | $18,121.00 | $11,704.00 | $0 |
| Land Rover Auto | $18,000.00 | $19,493.95 | 0 | $0 |
| LPL Financial IRA | $145,000.00 | | $145,000.00 | $0 |
| Office Equipment | $500.00 | | $500.00 | $0 |

Page 15

| Homestead Houston | $552,500.00 | $263,233.00 | $289,267.00 | $0 |
|---|---|---|---|---|
| | | | Total Equity less exemptions | $88,000 |
| | | Total of IRS floating Lien | | $172,899 |
| | | Total Net Equity | | $0.00 |

In a chapter 7 liquidation, the estimated liquidation value of $0.00 would be applied to the chapter 7 Trustee's fees and expenses and then to priority claims. This would produce the following:

| Liquidation Value | 0 |
|---|---|
| Estimated Trustee's Fees and expenses | 0 |
| Estimated priority claims | 22,287 |
| Total available for holders of unsecured claims | 0 |
| Estimated unsecured claims | 30,519.25 |
| Estimated percentage recovery in liquidation | 0% |

Because the plan forecasts to pay holders of unsecured claims 102.75% of the amount of their claims and a chapter 7 liquidation is forecast to pay 0.0%, this plan satisfies the liquidation test as to holders of unsecured claims.

### 13. Prepayment

Any claim may be prepaid at any time, without penalty. Interest as provided in this plan must be paid through the date of prepayment.

### 14. Tax Issues

The federal income tax effects on holders of claims will vary depending on how the holder has treated its claim for tax purposes. For example, if the holder has a basis in its debt claim and is paid an amount less than its basis, the holder may be entitled to a federal income tax deduction for its loss. This will depend on the holder's own tax characteristics and cannot be assured. Conversely, if the holder has no basis in its debt claim, the holder may recognize income for federal income tax purposes based on payments under the plan.

Because each holder's federal income tax situation may vary, you are urged to consult your own tax advisors to determine the federal income tax effect of the plan on you.

Dr. McClung may also have a federal income tax effect from the plan. To the extent that indebtedness is discharged, Dr. McClung may have a basis adjustment in his assets. Moreover,

any sale of assets may produce taxable income. The forecasts set forth above incorporate Dr. McClung's best estimate of the federal income tax effect of the plan.

### 15. Executory Contracts and Leases

Except for the assumed contracts and leases listed in the following chart, all executory leases and contracts are rejected as of the Effective Date. Proofs of claim for damages arising from the rejection of an executory lease or contract must be filed not later than 30 days after the Effective Date. Claims filed after that date will not be paid.

| Contracting Party | Description of Contract | Amount Required to Cure Any Default |
|---|---|---|
| None | | |
| | | |
| | | |

The amount shown under "Amount Required to Cure Any Default" will be paid not later than 30 days after the Effective Date of the Plan.

If you are the Contracting Party on an assumed contract and disagree with the cure amounts shown, you must file an objection prior to the objection deadline of October 31, 2014. If you do not file an objection prior to the objection deadline, the Court may confirm the plan and you will be bound by the terms of the confirmed plan as to the cure amount.

### 16. Claims Objections

Claims objections must be filed not later than 30 days after entry of the order confirming the plan. This deadline may be extended by the Court, on motion by a party in interest. Any such motion must be filed not later than 30 days after entry of the order confirming the plan.

### 17. Additional Provisions

None

### 18. Discharge, Vesting and Effective Date

Upon completion of all payments, Dr. McClung must file a motion for discharge, served on all holders of allowed claims, in which they will certify that (i) they meet the standards set forth in § 1141(d)(5)(C) of the Bankruptcy Code; and (ii) have completed all payments under the plan. Unless a party objects and the Court sustains the objection to the motion for discharge, Dr. McClung will be discharged of his liability on debts to the maximum extent allowed by § 1142 of the Bankruptcy Code.

Pending completion of the payments under the plan, the plan's provisions bind all persons to the extent allowed by § 1141(a) of the Bankruptcy Code.

All estate property is vested in Dr. McClung on the Effective Date of the plan, free and clear of all claims and interests except (i) as provided in this plan; and (ii) for claims and interests that are excepted from discharge under § 523 of the Bankruptcy Code.

This Effective Date of this plan is the 15th day after entry of the order confirming the plan, unless the confirmation order is stayed. If the confirmation order is stayed, the Effective Date shall be the 15th day following the termination of the stay. No party may act pursuant to this plan prior to the Effective Date.

### 19. Obligations to United States Trustee

Dr. McClung will be responsible for timely payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6). Any fees due as of the date of confirmation will be paid on the Effective Date. After confirmation, Dr. McClung will continue to file timely financial reports in the format required by the United States Trustee and continue to pay quarterly fees as accrued until the case is closed, converted to a case under chapter 7, or dismissed. Provided that the initial payments due within the first 30 days after the effective date of the Plan have been made, Dr. McClung may file to administratively close the case. The grant of said motion will relieve Dr. McClung of the obligation to file Monthly Operating Reports and pay US Trustee Fees for the duration of the Plan unless and until any party in interest brings a Motion before the court, other than a Motion filed by Dr. McClung seeking discharge. All provisions of the code pertaining to an open individual Chapter 11 case shall continue to apply as though the case remained open.

### 20. Default

If there is a default in payment to a creditor under this plan, the default must be cured within 21 days of written notice sent by the affected creditor. If the default is not cured within the 21-day period, the creditor may seek any rights available under the Bankruptcy Code or under applicable non-bankruptcy law.

### 21. Conclusion

Tony McClung has filed this plan and disclosure statement. He represents that he believe the information contained in this document to be true and correct in all respects.

Dated: 10 OCTOBER 2014

Submitted through his counsel:  _____Tony McClung_____

Donald Wyatt

Wyatt and Gracey PC
26418 Oakridge Drive
The Woodlands, TX 77380
Phone: 2814198733
Fax: 2814198703
don.wyatt@wyatt-gracey.com